RECEIVED
JSDC. CLERK, CHARLESTON, SC
2010 OCT 14 A 10: 46

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Karen Strickland, ) C. A. No. 2:09CV-01882-RMG-RSC
)
    Plaintiff, )
)
-versus ) **REPORT AND RECOMMENDATION**
)
Berkeley County School )
District, a Political )
Subdivision of the State of )
South Carolina, )
)
    Defendants. )

This employment discrimination case is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment filed on April, 16, 2010. 28 U.S.C. § 636(b).

The Plaintiff, Karen Strickland, sued her former employer, Berkeley County School District (BCSD), on July 15, 2009, and alleged she had been discriminated against because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.

The Plaintiff filed an opposition to the summary judgment motion May 7, 2010, and oral argument before the undersigned was had on June 8, 2010. Hence it appears consideration of the motion is appropriate.

### SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material

1

fact." Fed.R.Civ. 56(c). The court is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. V. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. V. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. Ash. V. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond

inference and into the realm of mere conjecture. <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 242 (4th Cir. 1982).

**FACTS**

Karen Strickland, Plaintiff, was employed by the Berkeley County School District, at Devon Forest Elementary School (DFE), as a cafeteria worker beginning in October 2007. Plaintiff's immediate supervisor was Sherrie Hall, the cafeteria manager.

Upon beginning employment with DFE, Plaintiff was provided a copy of the BCSD's employment policies, which included its policy prohibiting sexual harassment and which also provided a procedure for bringing sexual harassment to the attention of management. Plaintiff signed a statement confirming her receipt of the policy on October 17, 2007. (Defendant's Exhibit D).

In November 2007 Plaintiff asked a male employee of the BCSD who was working in the cafeteria if he wanted something to eat. He responded, "I want to eat you." (Plaintiff's Deposition, page 71). Plaintiff was offended by the man's answer so she reported this remark to her supervisor, Hall. Hall laughed and told her that the man was harmless. (Plaintiff's Deposition, page 68). Plaintiff continued to complain to Hall and Hall told her the same thing, "most every time that [she] went in there." (Plaintiff's Deposition, page 68).

From early on in Plaintiff's employment, Ronnie Ford, a maintenance worker, was constantly in the cafeteria making

3

advances towards the female staff and "asking them out." (Plaintiff's Deposition page 80). Plaintiff stated that Petra, another female employee, was also uncomfortable with Ford. (Plaintiff's Deposition, page 80). Hall failed to take any action regarding Petra's complaint and told her to handle the matter herself. (Plaintiff's Deposition, page 81).

In December 2007 Ronnie Ford told Plaintiff that he had an albino penis. (Plaintiff's Deposition, page 88). Another maintenance worker named Larry, asked the Plaintiff if her "boobs were too big for her to lift the trash." (Plaintiff's Deposition, page 78). Plaintiff reported Larry's question to Hall.

On another unspecified occasion, Ronnie Ford told Plaintiff, "you're damn hot," and asked her if her "boobs were real." There was another incident where a male exterminator told Plaintiff that he could see her underwear. (Plaintiff's Deposition, pages 107-109).

On April 8, 2008, Plaintiff began a medical leave of absence. Plaintiff attributed this need for leave solely to her fibromyalgia, and not to any alleged sexual harassment. (Plaintiff's Deposition, pages 39-42).

In April 2008 Ronnie Ford walked up behind the Plaintiff, rubbed his erect penis on her buttocks, and said, "Hmm. How do you like that?" (Plaintiff's Deposition, page 92). Plaintiff stated that this final incident led to her decision to quit the

4

job. (Plaintiff's Deposition, page 92).

Plaintiff recalled an incident when one of the other workers reported Hall for misconduct unrelated to sex. Hall was reprimanded and spent a great deal of effort trying to find out who reported her. The school principal came in and told Hall to calm down, and not to worry about it, stating, "We'll take care of this. We'll find out who it was." (Plaintiff's Deposition, page 86). Plaintiff concluded that any complaint would not be kept confidential and would most likely jeopardize her job.

Plaintiff stated that she was frightened "to go above Hall's head" to seek remedial action because she believed she would be fired. (Plaintiff's Deposition, pages 84, 86). Hall made numerous statements to the effect that whatever happened in the cafeteria stayed in the cafeteria.(Plaintiff's Deposition, pages 76-77).

In May 2008 Plaintiff sent a letter to Dr. Chester Floyd, the BCSD's superintendent. The letter stated that male school district employees had said "flirty" things to her in the cafeteria and she gave the lone example of the, "I want to eat you" comment. The BCSD conducted an investigation and found Plaintiff's claim inconclusive.

In August 2008 Plaintiff was offered a job at a different school, with assurances that maintenance man Ronnie Ford would have access to that school in only controlled pre-approved circumstances. On August 15th, 2008, Plaintiff notified the BCSD

that she was rejecting the offer because BCSD would not assure her that Ronnie Ford would not have access to the school. Plaintiff's last day of employment was in April 2008.

**APPLICABLE EMPLOYMENT DISCRIMINATION LAW**

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1).

In prohibiting discrimination in the "terms, conditions, or privileges of employment," 42 U.S.C. § 2000e(a)(1), Title VII does not merely proscribe discriminatory acts that result in "tangible loss of an economic character," Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotation marks omitted). Rather, Title VII is also violated when an employee suffers sexual harassment that is "sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." Id. at 67, 106 S.Ct. 2399 (internal quotation marks omitted). In order to prevail on a claim for sexual harassment amounting to a hostile work environment, a plaintiff must prove "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's

6

conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." <u>Gilliam v. South Carolina Department of Juvenile Justice</u>, 474 F.3d 134, 142 (4th Cir. 2007); <u>Ocheltree v. Scollon Prods., Inc.</u>, 335 F.3d 325, 331 (4th Cir. 2003) (*en banc*); <u>Conner v. Schrader-Bridgeport Int'l, Inc.</u>, 227 F.3d 179, 192 (4th Cir. 2000).

In <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S.Ct. 2275 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher</u>, 524 U.S. at 787 (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-22, 114 S.Ct. 367(1993)).

In assessing whether a work environment is objectively hostile, a court must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris</u> at 23, 114 S.Ct. 367. No single factor is determinative. <u>See</u>, <u>Id</u>. In assessing whether the environment was objectively hostile, a court must bear in mind that Title VII is "designed to protect working women from the

kind of male attentions that can make the workplace hellish for women . . . . It is not designed to purge the workplace of vulgarity." Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995); see, Hartsell v. Suplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997) (noting that "Title VII is not a federal guarantee of refinement and sophistication in the workplace"). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). "[C]omplaints premised on nothing more than rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable under Title VII." Id.

### Employer Liability

The Forth Circuit has held that an employer is liable for sexual harassment by a non-supervisor such as here if "it knew or should have known about the harassment and failed to take effective action to stop it." Ocheltree, 335 F.3d at 333; Mikels v. City of Durham, 183 F.3d 323, 329, n.4 (4th Cir. 1999). ("It is now settled that the failure to act after notice standard is one for imposing Title VII liability on employers for their direct negligence . . . ."). Under this standard, liability attaches to an employer when, after acquiring actual or

8

constructive knowledge of the allegedly harassing conduct, the employer fails to take prompt and adequate remedial action to correct it. Id. The employer standard for liability for co-worker harassment is a negligence standard. Smith v. City of N. Charleston, 401 F.Supp.2d 530, 534 (D.S.C. 2005).

Further, "the law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 268 (4th Cir. 2001)(internal quotation marks omitted). "[A]n employee may not impute liability on an employer under a theory that the employer must exercise an all-seeing omnipresence over the workplace." Howard v. Winter, 446 F.3d 559, 567 (4th Cir. 2006).

## **DISCUSSION**

A review of the record and relevant case law indicates that the defendant's motion for summary judgment should be granted.

The school district does not dispute that the alleged conduct was unwelcome and based on sex. However, Plaintiff cannot prove the third and fourth elements necessary to support her claim as a matter of law.

Over a six month period Plaintiff pointed to under a dozen comments made by male workers. Random vulgar comments without more do not suffice to create a jury question regarding whether

the harassing conduct was sufficiently severe or pervasive to alter the terms and conditions of employment. But See, EEOC v. R & R Ventures, 244 F.3d 334, 340, 4th Cir. 2001)(concluding that environment was hostile when employee was subjected to comments about her breasts and buttocks and inappropriate sexual remarks on a *daily basis*). The Plaintiff also points to one incident of touching which happened on her last day of work. As the court found in Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) a male co-worker's conduct consisting of several incidents of unwanted touching, attempts to kiss, placing "I love you" signs in work area, and asking a female employee out on dates did not create a hostile work environment.

Although a reasonable person could find this touching offensive, Plaintiff did not report this incident until after she left her place of employment as required by Ocheltree and its prodigy to impute liability to the employer. At most, Plaintiff has identified teasing, offhand comments, and isolated incidents, some of which she herself did not deem worthy of reporting to Hall or other BCSD management. Faragher, 524 U.S. at 788.

Plaintiff has failed to prove that the conduct by her co-workers was imputable to BCSD. Throughout Plaintiff's employment at DFE, the BCSD had in place a detailed and legally appropriate policy explicitly prohibiting the type of conduct Plaintiff alleged here. The policy further provides a complaints procedure

which would have allowed Plaintiff to report her concerns to the school principal or the "Title IX Coordinator" if she was uncomfortable reporting to her immediate supervisor, Hall. This is "compelling proof" that the employer exercised reasonable care in preventing and coordinating sexual harassment. Barrett, 240 F.3d at 266. The only way to rebut this proof is to show that the employer administered a harassment policy in bad faith or that the policy was otherwise defective. Faragher, 524 U.S. at 808. No such proof exists in the instant case.

Again, an employer is liable for sexual harassment by a non-supervisor if they "knew or should have known about the harassment and failed to take effective action to stop it." Ocheltree, 335 F.3d at 333. Plaintiff simply failed to prove that the District knew or should have known that she was being sexually harassed by her co-worker(s). Plaintiff did not report any touching or inappropriate conduct by Ronnie Ford until after she stopped working at DFE. Further, crediting all Plaintiff's allegations, they are still insufficient to establish an actionable hostile environment under Title VII. Mikels v.City of Durham, 183 F.3d 323, 329, n. 4 (4th Cir. 1999).

Finally, Plaintiff is in no position to challenge the reasonableness of the BCSD's remedial scheme because she refused to even give it a chance to work. See Phillips v. Taco Bell Corp., 156 F.3d 884, 890-91 (8th Cir. 1998)(asserting that an

employee must afford the employer a fair opportunity to demonstrate that its reasonable corrective actions would remedy the alleged harassment).

In summary, Plaintiff failed to make a threshold showing of severe and pervasive harassment by co-worker(s) necessary to sustain a hostile work environment claim, nor can she prove that the alleged conduct is legally imputable to the defendant.

## **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment be granted.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

October 13, 2010